IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Kevin Harbin, # 303214, | ) | |
| | ) | |
| | ) | Civil Action No. 6:13-1973-JMC-KFM |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| South Carolina Department of Corrections; | ) | |
| William R. Byars, Jr., *Director*; John H. | ) | |
| Carmichael, Jr., *Deputy Director*; Gary A. | ) | |
| Boyd, *Director of Inmate Services*; Lloyd | ) | |
| J. Roberts, *Chief Chaplain of Inmate* | ) | |
| *Services*; Omar Shaheed, *Senior Muslim* | ) | |
| *Chaplain of Islam Affairs*; Tamir Abdul | ) | |
| Mutakabluir, *Islam Affairs*; Reginald Cruz, | ) | |
| *Chaplain of Inmate Service*s; Glenn Sherman, | ) | |
| *Chaplain of Inmate Services*; David Tatarsky, | ) | |
| *General Counsel*; Sandra Bowie, *Policy* | ) | |
| *Development*; and J. Michael Brown, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

        This matter is before the court on the defendants' motion for summary judgment (doc. 128). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## **PROCEDURAL HISTORY**

The above-captioned case was originally filed in the Court of Common Pleas for Richland County (Case No. 2013-CP-40-1354). Although styled as a multi-plaintiff case, plaintiff Kevin Harbin was the only one who signed the complaint filed in the Court of Common Pleas. On July 17, 2014, the defendants filed a notice of removal (doc. 1), and on July 20, 2013, filed an answer (doc. 6). On July 22, 2013, the defendants filed a motion to dismiss all plaintiffs except plaintiff Harbin (doc. 8). On July 23, 2013, the undersigned issued a *Roseboro* order (doc. 9) to apprise all plaintiffs of dispositive motion procedure. *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).

On August 14, 2013, after receiving an extension of time, the plaintiff Harbin filed his response (doc. 30) to the motion to dismiss. In a report and recommendation (doc. 39) filed on August 29, 2013, the undersigned recommended that all plaintiffs except Harbin be dismissed from the case. In a separately-filed order (doc. 40) also filed on August 29, 2013, the undersigned granted the plaintiff Harbin's motion to amend. The amended complaint (doc. 40) was filed on August 29, 2013. On September 5, 2013, the undersigned authorized service of process upon defendant Omar Shaheed (doc. 51). The plaintiff Harbin filed a motion for jury trial (doc. 60) on September 11, 2013. On September 12, 2013, the defendants filed an answer (doc. 61) to the amended complaint. In an order filed on September 20, 2013, the undersigned authorized service of process upon defendant J. Michael Brown and issued a redaction order with respect to defendant Gary A. Boyd (doc. 69). On October 18, 2013, defendant Gary A. Boyd filed an answer (doc. 85). The plaintiff Harbin's motion to appoint counsel (doc. 77) was denied on October 21, 2013 (doc. 89). On November 4, 2013, the Honorable J. Michelle Childs, United States District Judge, adopted the report and recommendation to dismiss all plaintiffs except Harbin (hereinafter "the plaintiff") (*see* doc. 97).

The plaintiff filed a second motion to amend (doc. 103) on November 21, 2013.  On November 26, 2013, the defendants filed a motion for extension of time to file dispositive motions (doc. 104).  On December 2, 2013, defendant J. Michael Brown filed an answer (doc. 105) .  The undersigned granted the defendants' motion for extension of time on December 3, 2013 (doc. 107), and on December 10, 2013, denied the plaintiff's second motion to amend (doc. 113).  On February 11, 2014, the undersigned denied various discovery-related motions filed by the plaintiff (doc. 125).

On February 24, 2014, the defendants filed a motion for summary judgment with affidavits (docs. 128, 129).  A *Roseboro* order (doc. 130) was issued on February 24, 2014, to apprise the plaintiff of the dispositive motion procedure.  After receiving an extension of time, the plaintiff filed his response in opposition to summary judgment (doc. 136) on April 16, 2014.  After receiving an extension of time, the defendants filed their reply (doc. 141) on May 8, 2014.

### *Original and Amended Complaint*

The plaintiff is a member of the Nation of Islam ("NOI").  According to the plaintiff, prior to June 1, 2002, the South Carolina Department of Corrections ("SCDC") allowed NOI inmates to conduct study group classes, but since that date, the SCDC has not allowed NOI inmates to do so (doc. 1-1 at 3).  Essentially, the plaintiff contends that the defendants should allow separate study group classes for NOI inmates in the manner allowed for "separately recognized" Protestant groups, Christian Science, Jehovah's Witnesses, and Latter Day Saints (Mormons) because there are different denominations of Muslims (*id.*).  The plaintiff also alleges that "S.C.D.C. Policy does not recognize different Muslim denominations" (*id.* at 4).  The plaintiff alleges that his free exercise rights have been denied by the defendants (doc. 3 at 6–7).

3

As stated above, on August 29, 2013, the undersigned granted the plaintiff's motion to amend (doc. 40).  In the amended complaint (doc. 43), the plaintiff added claims against J. Michael Brown, who is a Senior Chaplain (doc. 43 at 1–3).

**Defendants' Motion for Summary Judgment**

According to the defendants, the plaintiff appears to allege that SCDC policy violates his rights "by failing to differentiate between Nation of Islam (NOI) and the Muslim (or Al-Islam) religion," NOI inmates are not provided separate programs and services, and the SCDC does not employ a NOI Chaplain (doc. 128-1 at 1–2).   Therefore, the defendants are treating the plaintiff's claims as raised under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") with supplemental claims under South Carolina law (*id.* at 3).

In the memorandum in support of the motion for summary judgment, the defendants contend: (1) the plaintiff's claims should be dismissed under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009) (doc. 128-1 at 3–5); (2)  the plaintiff has failed to show a violation of his rights under the First Amendment or RLUIPA (*id.* at 5); (3) this court has already considered claims similar to the plaintiff's claims in *Allen v. South Carolina Dep't of Corr.*, C.A. No. 3:10-939-HMH-JRM, 2012 WL 1655295 (D.S.C. May 10, 2012), *adopting* Report and Recommendation reported at 2012 WL 1655297 (D.S.C. Apr. 24, 2012) (doc. 128-1 at 5–7); (4)  the plaintiff does not satisfy the two-prong RLUIPA test because SCDC policies do not impose a substantial burden and meet the "strict scrutiny" standard (*id.* at 7–18); (5)  the plaintiff cannot obtain money damages under RLUIPA (*id.* at 19); (6)   the defendants are entitled to qualified immunity (*id.* at 19–21); (7)   the plaintiff's claims against defendant Brown for a missed pastoral visit on August 2, 2013, five days prior to the filing of the amended complaint, should be dismissed for failure to exhaust prison remedies (*id.* at 22–24); and (8)  the defendant Tatarsky is not liable for his involvement, if any, in the prison grievance system (*id.* at 24–25).

Submitted in support of the motion for summary judgment is the affidavit of Michael McCall, Deputy Director for Programs and Services (doc. 128-2 at 1–4).  Also appended are copies of SCDC Policy No. PS-10.05 (*id.* at 6–19); the SCDC Handbook of Inmate Religious Practice (*id.* at 20–42); the affidavit of now-retired Muslim Chaplain Omar Shaheed (*id.* at 1–5); a second copy of the SCDC Handbook of Inmate Religious Practice (doc. 128-3 at 7–23); the affidavit of J. Michael Brown (doc. 129 at 1–5); SCDC reports of religious activity (doc. 129-1 at 1–52); additional reports of religious activity (doc. 129-2 at 1–31); e-mail correspondence from Chaplain Reginald Cruse to Reggie Muhammad (doc. 129-3 at 1–3); a report of religious activity on August 2, 2013 (doc. 129-4 at 1–3); and certificates of service (doc. 129-5).

## *Plaintiff's Response*

In his response to the motion for summary judgment, the plaintiff argues: (1) the defendants do not satisfy the four-part *Turner v. Safley* test (doc. 136 at 3–4); (2) the plaintiff states a plausible claim for relief under *Ashcroft v. Iqbal* (*id.* at 6); (3) the defendants have violated S.C. Code. Ann. § 16-5-10 (*id.* at 8); (4) the plaintiff has suffered a violation of his rights under the First Amendment, Due Process Clause, and RLUIPA (*id.* at 9–11); (5) municipalities may be held liable under Section 1983 (*id.* at 11–13); (6) study groups are critical to the exercise of the plaintiff's religion (*id.* at 13–16); (7) the SCDC approach to Jumu'ah does not serve compelling governmental interests and is not the least restrictive means for accomplishing those objectives (*id.* at 16–18); (8) the defendants are not entitled to qualified immunity because they have violated clearly established law (*id.* at 18); and (9) although David Tatarsky is not the SCDC grievance director, all grievance issues are reviewed and given legal guidance by him with respect to the "establishment or change of municipal policy" with respect to the complaint (*id.* at 18–21).

Appended to the plaintiff's response are an affidavit of inmate Asherdon Holloway (doc. 136-1 at 1–3); a step 1 grievance filed by the plaintiff on January 13, 2014 (doc. 136-2 at 1–3); a request to staff dated July 11, 2014 (doc. 136-3); a State of South Carolina position description for Omar Shaheed (doc. 136-4 at 1–2); a page from the SCDC Inmate Religious Handbook (doc. 136-5); an affidavit from inmate Ferris Singley (doc. 136-6); additional requests to staff submitted by the plaintiff (doc. 136-7; doc. 137-8); a copy of a notice of appeal by the plaintiff to the Administrative Law Court dated June 22, 2009 (doc. 136-9); a written disapproval of a Louis Farakhan video by Chaplain Mutakabbir (doc. 136-10); requests to staff (docs. 136-11, 136-12, 136-13); a copy of a page from the NOI publication *Final Call* dated October 9, 2012 (doc. 136-14); a letter from the plaintiff to Director Bryan P. Stirling dated October 16, 2013, with exhibits (doc. 135-15); copies of pages from the SCDC Inmate Religious Manual (doc. 136-16); requests to staff (doc. 136-18); a letter notarized on April 2, 2014, from Minister William Muhammad to the SCDC (doc. 136-19); copies of SCDC reports of religious activity (doc. 136-20 at 1–9); a request to staff from inmate Asherdon Holloway dated January 6, 2013 (doc. 136-21); a request to staff by the plaintiff and a response from Tracy Webb, Program Coordinator, dated January 22, 2014 (doc. 136-22); a step 1 grievance filed by the plaintiff on December 12, 2011, his step 2 appeal, and an order of dismissal from South Carolina Administrative Law Court dated June 25, 2009, in Docket No. 09-ALJ-04-00576-AP (doc. 136-23).

### *Defendants' Reply*

The defendants filed their reply (doc. 141) on May 8, 2014.  The defendants contend:  (1) under *Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006), the SCDC has not imposed a "substantial burden" upon the plaintiff (doc. 141 at 1–2); (2)  SCDC policy has not caused the plaintiff to modify his behavior or violate his beliefs (*id.* at 2); (3) the incident with inmate leader Kenneth Nichols in July 2013, where he denigrated NOI

6

members, was promptly handled by the removal of Ken Nichols as an inmate leader and his transfer to another institution (*id.* at 3); (4) the plaintiff's submission of a portion of the *Final Call* shows that he is allowed to receive it (*id.* at 4); (5) federal courts have upheld the use of generic Jumu'ah services in other RLUIPA cases (*id.*); (6) since the defendants satisfy RLUIPA, they also satisfy the *Turner v. Safley* standard (*id.* at 5–6); (7) the exhibits submitted by the plaintiff concern the elimination of instruction classes, not study groups (*id.* at 6–7); (8) the plaintiff's complaint and amended Complaint are "woefully deficient" under *Ashcroft v. Iqbal* (*id.* at 7); (9) the "only real exception" would be the events of August 2, 2013, but the plaintiff does not even mention these events in his response to the motion for summary judgment (*id.* at 7); and (10) the plaintiff has failed to show personal involvement by the original ten defendants, five of whom are now retired (*id.* at 7–8).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

7

*Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.   Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**RLUIPA**

A prison's failure to accommodate religious beliefs of inmates may be the subject of an action for injunctive relief under the RLUIPA, 42 U.S.C. §§ 2000cc through 2000cc-5, which was upheld by the Fourth Circuit Court of Appeals as constitutional in *Madison v. Riter*, 355 F. 3d 310 (4th Cir. 2003); *see Couch v. Jabe*, 679 F.3d 197, 203–04 (4th Cir. 2012).  Section 3 of the RLUIPA provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . .  (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).  The Supreme Court has noted that lawmakers supporting the RLUIPA "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Cutter v. Wilkinson*, 544 U.S. 709, 723

8

(2005) (citation omitted).  A plaintiff bears the burden of persuasion on whether the policy or practice substantially burdens his or her exercise of religion.  *See* 42 U.S.C. § 2000cc–2(b).

The RLUIPA does not define the term "substantial burden"; however, the Supreme Court has stated "that, for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)).  If a plaintiff satisfies this requirement, the government must then prove that the challenged policy is the least restrictive means of furthering a compelling governmental interest.  *See* 42 U.S.C. § 2000cc–1(a); and *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009).  "As to those elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government." *Smith*, 578 F.3d at 250 (citation omitted).  In a recent RLUIPA case, the Fourth Circuit Court of Appeals noted that it had "required that the government, consistent with the RLUIPA statutory scheme, acknowledge and give some consideration to less restrictive alternatives" in order to show that its policy is the least restrictive means of furthering the identified compelling government interest.  *Couch*, 679 F.3d at 203.

Section 3 of the RLUIPA applies when "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance" or "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes."  42 U.S.C. § 2000cc-1(b)(1)-(2).  The Supreme Court has indicated that the federal financial assistance requirement is met with respect to inmates housed in a state prison system.

9

*Cutter v. Wilkinson*, 544 U.S. 709, 716 n.4 (2005) ("Every State . . . accepts federal funding for its prisons.").

In *Allen v. South Carolina Dep't of Corr.,* C.A. No. 3:10-939-HMH-JRM, 2012 WL 1655295 (D.S.C. May 10, 2012), *adopting* Report and Recommendation reported at 2012 WL 1655297 (D.S.C. Apr. 24, 2012), the Honorable Henry M. Herlong, Jr., Senior United States District Judge, concluded that the generic Al-Islam services provided by the SCDC did not impose a substantial burden on an NOI inmate as required by *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). In *Allen*, an NOI inmate brought an action under RLUIPA alleging that SCDC policy at the Broad River Correctional Institution violated RLUIPA because it failed to differentiate between the NOI religion and the Muslim (or Al–Islam) religion.  As in *Allen*, the plaintiff in this case claims that the SCDC does not recognize NOI as a separate religion and that NOI inmates are not provided separate privileges including Friday services (known as Jumu'ah) and study groups.  *See Allen*, 2012 WL 1655297, at \*1.

As determined in *Allen*, while courts have recognized the differences between NOI and "orthodox" Islam, generic Muslim services offered by prisons provide comfort and solace to NOI inmates without pressuring them to commit acts forbidden by their religion or from having a religious experience mandated by their faith. 2012 WL 1655297, at \*4–5 (collecting published and unpublished cases from other federal district courts and the Sixth Circuit Court of Appeals holding that separate services for NOI inmates are not required under RLUIPA or other federal statutes).  The *Allen* court also noted that lack of staff and space for separate NOI services justifies a policy of not allowing separate services for each Islamic sect.  *Id*. at \*6 ("Defendant has met its burden of showing that its religious policy (which includes the use of a generic Muslim Jumu'ah service rather than separate services for the NOI followers, and the requirement that certain information be provided and approved prior to allowing a separate study group)

10

is the least restrictive means of furthering its compelling governmental interests of safety and security interests, as well as staffing limitations and space constraints.").

The affidavit filed by defendant Shaheed (doc. 128-3) indicates that the SCDC does not provide for separate Jumu'ah services for each Muslim sect because Jumu'ah services must be held on a Friday just after the sun has passed midday; the SCDC had at the time only two Muslim chaplains; it is not economically feasible for the SCDC to employ Muslim chaplains at each SCDC institution for a Jumu'ah service; Jumu'ah services must be held in a clean and quiet room with adequate space; there is not adequate space for separate Jumu'ah services for each Muslim sect; there is not adequate security staff for separate services; if separate Jumu'ah services for allowed for NOI inmates, other Muslim sects (such as Sunni, Shia, Sufi, and Lost-Found) would likely seek the same privilege; and it is not necessary for NOI inmates to have separate Jumu'ah services to properly exercise their religious beliefs (doc. 128-3 at 2–3). Defendant Shaheed's affidavit is similar to the affidavits filed by defendant Carmichael and defendant Shaheed in *Allen*, 2012 WL 1655297, at *6. The conclusions reached in *Allen* are persuasive in the instant case, and summary judgment should be granted to the defendants with regard to the plaintiff's claims under RLUIPA.

***Damages under RLUIPA***

Both the Supreme Court and the Fourth Circuit Court of Appeals have limited damages available pursuant to RLUIPA. *See Sossamon v. Texas*, 131 S.Ct. 1651, 1663 (2011) ("We conclude that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."); and *Rendelman v. Rouse*, 569 F.3d 182 (4th Cir. 2009) (rejecting a claim that the spending clause permitted RLUIPA claims for individual capacity damages). In other words, the plaintiff's request for

11

damages relating to the alleged failure of SCDC officials to accommodate his religious beliefs are barred by sovereign immunity.

### *First Amendment*

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. 1.  "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Importantly, however, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The court considers four factors to determine if prison regulations are reasonably related to legitimate penological interests:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether the interest is "so remote as to render the policy arbitrary or irrational;" (2) whether "alternative means of exercising the right . . . remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

*Lovelace*, 472 F.3d at 200 (quoting *Turner*, 482 U.S. at 89–92).  When applying these factors, the court must "respect the determinations of prison officials." *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991).  The burden of proof under the *Turner* analysis is

12

on the prisoner to disprove the validity of the prison regulation at issue. *See Overton*, 539

U.S. at 132.

The Fourth Circuit Court of Appeals has explained the differences between

the analysis of a First Amendment claim and a claim under RLUIPA:

> In its most basic protections, RLUIPA mimics the First Amendment. RLUIPA incorporates the "substantial burden" test used in First Amendment inquiries and expressly refers to the Free Exercise Clause in allocating its burden of proof. . . . The primary difference . . . is that RLUIPA adopts a "more searching standard" of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness.

*Lovelace*, 472 F.3d at 198 n.8 (citing 42 U.S.C. § 2000cc-2). Since the defendants are

entitled to summary judgment on the plaintiff's RLUIPA claim under the so-called strict

scrutiny standard, summary judgment should be granted to the defendants on the

plaintiff's First Amendment claims. *See Watts v. Byars*, C.A. No. 6:12-1867-JFA-KFM,

2013 WL 4736693, at *10 (D.S.C. Sept. 3, 2013) ("As this court finds that the defendants

are entitled to summary judgment on the plaintiff's RLUIPA claim under the 'more

searching' strict scrutiny standard, this court further recommends that the plaintiff's First

Amendment claim be dismissed for the same reasons.").

**Failure to Exhaust**

As noted above, on August 29, 2013, the undersigned granted the plaintiff's

motion to amend. In the amended complaint (doc. 43), the plaintiff added claims against

Senior Chaplain J. Michael Brown (doc. 40 at 1–3). The plaintiff's claims in the amended

complaint concern the denial of a pastoral visit on August 2, 2013, with Brian E.

Muhammad, a "student minister" (doc. 43 at 2). The amended complaint, though filed

pursuant to the order (doc. 40) entered on August 29, 2013, was actually signed by the

plaintiff on August 5, 2013, three days after the scheduled pastoral visit (doc. 43 at 3).

13

Hence, it is clear that the plaintiff did not exhaust his available prison remedies with respect to J. Michael Brown prior to preparing the amended complaint.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Booth v. Churner*, 531 U.S. 956 (2001). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); and *Anderson v. XYZ Corr. Health Servs*, 407 F.3d 674, 683 (4th Cir. 2005) ("an inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant"). No unexhausted claims may be considered by a district court, and such unexhausted claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Accordingly, the defendants' are entitled to summary judgment regarding this claim as the plaintiff failed to exhaust his available prison remedies before filing the amended complaint.

### Inmate Kenneth Nichols

A Jumu'ah was service conducted in June 2013 by an inmate leader, Kenneth Nichols (SCDC # 312169). According to the plaintiff, inmate Nichols, who is a member of the Sunni sect, made disparaging comments about Christians and members of the NOI (doc. 129-5 at 2–3). Inmate Asherdon Holloway (another NOI inmate)

14

submitted a request to staff member on June 14, 2013, which was directed to Chaplain J. Michael Brown.  Chaplain Brown's affidavit (doc. 129-1) and Exhibit E (doc. 129-5) shows that Chaplain Brown's investigation substantiated the allegations about inmate Nichols (doc. 129-5 at 2).  Chaplain Brown found that inmate Nichols' comments in disparagement of NOI members and Christians violated SCDC Policy PS-10.05, 7-3. Chaplain Brown's affidavit indicates that the inmate leader (Nichols) was removed from his position, security staff was notified, and the inmate was transferred to another SCDC prison (doc. 129 at 5).    The Public Index of the SCDC public website (http://public.doc.state.sc.us/scdc-public/inmateDetails.do?id=%2000312169, last visited on June 10, 2014) reflects the transfer of inmate Nichols from the Broad River Correctional Institution to a different institution on July 18, 2013.  A federal court may take judicial notice of factual information located in postings on governmental websites in the United States.  *Mitchell v. Newsom*, C.A. No. 3:11-0869-CMC-PJG, 2011 WL 2162723, *3 n. 1 (D.S.C. May 10, 2011) (collecting cases), *adopted by* 2011 WL 2162184 (D.S.C. June 1, 2011).  Therefore, it is clear from the record that defendant Brown took action with respect to inmate Nichols' derogatory comments about the NOI (doc. 129 at 5).

### *SCDC General Counsel Tatarsky*

In his response to the motion for summary judgment, the plaintiff acknowledges that SCDC General Counsel Tatarsky is not the SCDC Grievance Coordinator.  Defendant Tatarsky was not personally involved in the religious issues or grievance processing.  Hence, liability may not be imposed upon him. *Smith v. Beasley*, C.A. Nos. 0:07-1641-HFF-BM and 0:07-1642-HFF-BM, 2007 WL 2156632, at *2 (D.S.C. July 25, 2007) (adopting magistrate judge's Report and Recommendation finding that a plaintiff suing a government official in individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right).

15

Prison inmates do not have a constitutionally protected right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). As a result, any alleged problems with the SCDC grievance procedure do not amount to a cognizable Section 1983 claim. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

**Qualified Immunity**

The individual defendants are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. Qualified immunity also may apply to protect officials from civil liability for claims based on violation of constitutional rights or rights under RLUIPA. *See Lovelace*, 472 F.3d at 196–97.

To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As discussed above, the plaintiff's allegations fail to demonstrate that the defendants violated his constitutional rights under RLUIPA or the First Amendment. Therefore, the undersigned recommends that the defendants are likewise entitled to qualified immunity. *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023–24 (2014). Under *Pearson v. Callahan*, it is not necessary to proceed to the second step of the qualified immunity test. 555 U.S. at 236–43 (court may address these two prongs in whatever order it deems appropriate), *superannuating, in part, Saucier v. Katz*, 533 U.S. 194 (2001).

***State Law Claims***

As the defendants are entitled to summary judgment with respect to the plaintiff's federal civil rights and RLUIPA claims, this court should decline to exercise supplemental jurisdiction over the three state-law causes of action raised in the original and amended complaints. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Tigrett v. Rector and Visitors of the Univ. of Virginia*, 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 128) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

June 12, 2014
Greenville, South Carolina

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).